IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUPREET KAUR<br>6500 Whittlesey Blvd<br>Columbus, GA 31909<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF THE ARMY<br>101 Army Pentagon<br>Washington, DC 20310-0101<br><br>Defendant. | ) | CIVIL ACTION NO. |

**COMPLAINT**

Plaintiff Dr. Supreet Kaur, by and through undersigned counsel, files this complaint against the defendant Department of the Army, alleging as follows:

**PARTIES**

1. Plaintiff Dr. Supreet Kaur is a former active-duty officer in the United States Army.
2. Defendant Department of the Army ("Defendant" or "Agency") is a federal agency with its primary offices located in the District of Columbia.

**JURISDICTION AND VENUE**

3. This action is brought under the Administrative Procedures Act (APA), 5 U.S.C. § 701, et seq, due to Defendant Whitley's arbitrary and capricious depravation of Dr. Kaur's constitutional rights to Due Process and disregard for procedures required by law.
4. The APA permits judicial review of final agency action by which an individual is adversely affected or aggrieved. 5 U.S.C. §§ 702, 704. The declaratory relief requested herein is proper under 5 U.S.C. §§ 706(1)-(2).

5. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is the judicial district in which Defendant is located.

## INTRODUCTION

6. Dr. Kaur worked as an emergency room doctor at Fort Benning Martin Army Community Hospital (MACH) as an active duty United States Army officer between January 2014 and August 2017. After suffering some personal and medical complications that prevented her deployment and various conflicts with her command, her privileges were placed into abeyance in September 2016, and in 2017 Dr. Kaur was discharged from the Army. Five months after her discharge (and her service at MACH ended), the issues with her privileges went before a peer review panel (PRP), which determined that her privileges should be reinstated, along with a Monitoring and Evaluation (M&E) plan. Under normal circumstances, an M&E plan would not be a significant issue, as they normally resolve within a few months, after which the provider's privileges are reinstated without condition (and therefore are not reportable to future inquiring employers). But because Dr. Kaur is no longer in the Army or serving at MACH, there is no way for the M&E to be resolved, and it will be reported to all future potential hospitals and facilities that she may seek employment with at a later date. The decision to place Dr. Kaur on an unfulfillable and permanent M&E plan, which provides her no appellate recourse, was arbitrary, capricious, an abuse of discretion, and contrary to her Constitutional rights.

## FACTUAL BACKGROUND

7. Dr. Kaur served on active duty in the U.S. Army at the rank of Captain (O-3) between October 2013 and August 2017. She reported to MACH, Fort Benning, Georgia, in January 2014 to serve as an emergency room physician.

8. In the fall of 2016, Dr. Kaur began experiencing personal medical complications which rendered her non-deployable. This created friction with her command, and in September 2016, the command, without any justifiable reason or question of her competency to practice, placed her clinical privileges in abeyance. After no further action was taken, and while Dr. Kaur continued to see patients at one of the highest volumes of any practitioner at MACH, she was again notified in February 2017 that her privileges were being held in abeyance pending a Quality Assurance (QA) Investigation.
9. On August 2, 2017, Dr. Kaur was discharged from the Army, thereby severing any working relationship with MACH. She returned to her home of record, Colorado.
10. In November 2017, Dr. Kaur's case went before a Peer Review Panel PRP for consideration of whether Dr. Kaur demonstrated treatment error with failure to diagnose, delay of diagnosis, delay in treatment, or error in clinical judgement in her treatment of two patients (both of which were seen by Dr. Kaur well before September 2016). Dr. Kaur submitted a rebuttal to both instances, explaining how her standard of care was within prescribed and accepted standards. She was not permitted the opportunity to appear in person (which would have been difficult given she was no longer residing in Georgia or in the Army) or present any live witness testimony. She was permitted to appear before the panel via telephone to answer any questions posed by the PRP, but there were none.
11. On February 14, 2018, after receiving no further correspondence on the matter, Dr. Kaur, through counsel, inquired into the status. The credentials manager replied on February 20, 2018, informing that a decision had been made, but was awaiting approval of the privileging authority (the commanding officer of MACH).

12. It was not until June 8, 2018, in response to yet another email from Dr. Kaur's counsel, that the credentials manager informed Dr. Kaur that the PRP had recommended reinstatement of her privileges, but with an M&E plan consisting of 100% supervision by another emergency medicine physician. The email did not provide the parameters or length of the M&E (which was subsequently approved by the privileging authority), nor did it provide justification for the decision. Dr. Kaur was not provided an official letter documenting this decision; instead, she was informed to use the email as official notice.

13. Upon further inquiry into the specifics of the M&E (*i.e.*, whether it was reportable to the National Practitioners Database (NPDB) and how long it would last), Dr. Kaur's counsel was informed:

> In Dr. [Kaur]'s case, since she was "reinstated with an M&E", this is not considered an adverse action and is therefore not reported. If she remained here, the Chief, Department of Emergency Medicine or their medical director would develop an M&E plan designed to address any of the issues that led to her originally being placed in abeyance. The plan would also provide guidance on specifically what she needed to do to successfully complete the M&E. And finally, depending on the extent of the issues to be worked on, the time frame would be set accordingly. Most M&Es normally last 1-3 months. They can be completed early if the leadership feels the provider has progressed, but they can be extended if not.
>
> Since Dr. [Kaur] has left our organization, her privilege status will remain as "reinstated with an M&E" indefinitely. Again, this is not adverse, however, she needs [sic] to claim it whenever she applies for privileges at other institutions.

14. Dr. Kaur was informed that this was a non-appealable final decision because it was not considered to be "adverse." Through counsel, Dr. Kaur pressed the issue, asking if there was a policy or provision that requires the M&E to remain in the system indefinitely, and informing the agency that the decision was indeed "adverse," as it would now be reported to all future employers without Dr. Kaur ever being provided an opportunity to either fulfill the M&E, or appeal it.

15. Beginning in August 2018, Dr. Kaur attempted to resolve the outstanding questions by further discussion with the legal department. Initially, it was requested that the M&E be removed given the potential adverse nature of the decision, as Dr. Kaur was unable to fulfill a "plan" that hadn't been created at a position she no longer held.

16. On February 13, 2019, Dr. Kaur was informed that "[t]here was no way to change [her] status from M&E for the purposes of responding to facilities/providers that request this information. M&E is not considered to be an adverse status, although [we] recognize that she might have to explain it." Dr. Kaur was also informed that had she fulfilled the M&E, then "her privileges would have been reinstated unconditionally."

17. On March 15, 2019, Dr. Kaur inquired with MACH's legal team if the M&E could be satisfied through another place of employment where Dr. Kaur has been performing *locum tenens* work. As this issue was not covered under Army Regulation (AR) 40-68, the AR controlling privileges held by providers practicing within the Army or at Army military treatment facilities (MTF), the legal team was unable to respond, and forwarded the inquiry to higher-ups.

18. Dr. Kaur followed up a total of five more times, all with no response. Finally, on August 16, 2019, she received written notice dated August 5, 2019, stating the following:

> 1. On 10 January 2018, the Credentials Committee of Martin Army Community Hospital met and recommended that your clinical privileges be reinstated with a Monitoring & Evaluation (M&E) Plan. The purpose of the M&E was to assist with ensuring your clinical skills and competency were at the level commensurate with the standards of the organization and the expectations of safe quality care for our patients.
>
> 2. Since you had departed the organization in August 2017, you were never able to complete the M&E Plan. The operational assumption by the Credentials Committee was that if you ever had cause to return as a clinician to Martin Army Community Hospital, then you would assume the same status as when you left and complete your M&E. This officially left your privilege category in an open status pending resolution of the M&E. Guidance for this situation was not

provided within Army Regulation 40-68, Clinical Quality Management, but provisions within the new DHA-PM 6025.13, Volume 3, Enclosure 3, Paragraph 2,r,(5),(a),3,1 do provide a way forward. The paragraph states, "In cases where the MTF Credentials Committee/Functions recommendation is reinstatement with monitoring and evaluation, but the individual has separated from or ended affiliation with the MHS, thereby unable to complete such action, the Privileging Authority will issue a final MTF decision memorandum reinstating privileges and include any findings of clinical deficiency that was discovered in the clinical adverse action process. The decision letter will also state that these findings will be included in the individual's close out/detachment clinical evaluation and relied upon in responding to future queries regarding the individual."

3. In keeping with the above guidance, your close out clinical assessment and future letters of reference will include the following statement: CPT [Supreet Kaur], MD, worked in our Emergency Room, February 2014 until August 2017. As a result of two of her patient encounters that underwent Risk Management review, her privileges were suspended, but later reinstated with a monitoring and evaluation plan. A summary from the Peer Review Panel stated, "The first case involved a patient who expired from cerebral edema secondary to exercise-associated hyponatremia. The Panel felt that Dr. [Kaur] failed to appropriately diagnose symptomatic acute hyponatremia. This resulted in a delay of proper treatment and was also an error in management. The second case involved a patient who was discharged from the Emergency Department with a persistent Phalangeal dislocation while under Dr. [Kaur's] care. The Panel felt that Dr. [Kaur] failed to provide proper treatment and made an error in management when she discharged the patient who still had a phalangeal dislocation."

19. Although no formal appeal process exists for this situation, Dr. Kaur attempted to appeal this matter through the privileging authority. She requested reversal of the decision to reinstate with M&E, issuance of the final close out letter, and reliance on the findings in future inquiries by potential employers. Alternatively, she asked that she at least be permitted the opportunity to appeal and appear before a hearing, just as one who was facing restriction or revocations of her privileges would be permitted. In support of her request, Dr. Kaur contended that this final decision was arbitrary, capricious, and abuse of discretion, and contrary to law for the follow reasons: (1) the credentials committee knew Dr. Kaur would be unable to fulfill the M&E at MACH, and she was not permitted the opportunity to fulfill the M&E at a civilian facility; (2) the implementation of M&E in this case has resulted in a

deprivation of Dr. Kaur's right to due process; and (3) DHA-PM 6025.13, Vol. 3, is contrary to controlling law.

20. Over a year passed before Dr. Kaur finally received the agency's final decision. On January 22, 2021, Dr. Kaur was informed that the decision would remain. She was not offered, nor provided, any other avenue to appeal.

**FIRST CAUSE OF ACTION**
**(Administrative Procedure Act)**

**The Decision to Place Dr. Kaur on an M&E that was Impossible for Her to Fulfill was Arbitrary, Capricious and an Abuse of Discretion**

21. All preceding paragraphs are incorporated by reference as though fully set forth herein.

22. The APA permits an individual to sue a federal agency upon "suffering legal wrong because of agency action," or if they are "adversely affected or aggrieved by agency actions" 5 U.S.C. § 702.

23. "The reviewing court shall . . . hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" 5 U.S.C. § 706(2)(A).

24. The implementation of the M&E was arbitrary, capricious and an abuse of discretion because the Agency, the Commander and the Credentials Committee knew and understood that Dr. Kaur would be unable to fulfill the M&E at MACH. Dr. Kaur separated from the Army in August 2017, and the credentials committee did not meet until November 2017, five months later. At the time the committee met, it was common knowledge that Dr. Kaur was no longer serving in the Army, and thus would *never* return to MACH as a physician.

25. Not only was she placed on M&E with the understanding and expectation that she would never be able to fulfill it, but she was also denied the opportunity to fulfill the M&E at a

civilian facility. While Army Regulation 40-68 Kaurs not state that an M&E can be fulfilled at a civilian facility, it Kaurs seemingly give the Commander of the Military Treatment Facility (MTF) discretion to approve such action. *See* AR 40-68 at ¶ 10-11 (which permits remediation at a civilian facility with the approval of the MFT Commander). The Commander's failure or refusal to consider this option was arbitrary, capricious and an abuse of discretion.

26. Accordingly, this Court should find that implementing the M&E after Dr. Kaur had left MACH to be arbitrary, capricious and an abuse of discretion, and therefore unlawful.

**SECOND CAUSE OF ACTION**
**(Administrative Procedures Act)**

**The Decision to Place Dr. Kaur on an M&E Without Sufficient Due Process Deprived Her of Her Constitutional Rights**

27. All preceding paragraphs are incorporated by reference as though fully set forth herein.

28. In addition to the decision to place Dr. Kaur on an M&E being arbitrary, capricious and an abuse of discretion, it also violated Dr. Kaur's legal and Constitutional rights to due process.

29. The APA permits an individual to sue a federal agency upon "suffering legal wrong because of agency action," or if they are "adversely affected or aggrieved by agency actions." 5 U.S.C. § 702.

30. "The reviewing court shall . . . hold unlawful and set aside agency action, findings and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

31. The Fifth Amendment to the Constitution states that "No Person Shall Be . . . Deprived of Life, Liberty or Property without Due Process of Law".

32. Dr. Kaur has a liberty interest in maintaining her profession of choice, without suffering defamation in the process; indeed, Dr. Kaur disputes the allegations against her of providing substandard care and breaching standard of care in the two alleged incidents.

33. This liberty interests compels the requirement that Dr. Kaur be provided adequate due process of notice and an opportunity to respond. Dr. Kaur was never provided notice that if the peer review panel or the credentials committee recommended reinstatement with an M&E that she would be unable to complete, she would receive a final decision memorandum including any findings of deficiency, it would remain in effect permanently, and would be reported to future employers. This failure to provide notice of the possible repercussions precluded her from being able to provide a thorough response to the notice of the peer review panel.

34. If she had been provided notice of the potential adverse consequences of M&E being implemented with her no longer serving at the facility, then she would have addressed such in her response. Her response is devoid of any such discussion because she was never put on notice. The failure to provide adequate notice was a violation of her Constitutional right to due process.

35. In addition to the lack of notice, Dr. Kaur was deprived of her right to due process through the inability to appeal the M&E. The implementation of the M&E following Dr. Kaur's departure has had a negative impact on her privileges and her future employment, as each facility she applies to requesting admitting privileges will inevitably seek past employment information from MACH, who will in turn inform the other facilities of the specifics of the alleged substandard care. Had Dr. Kaur been permitted to resolve the M&E prior to her departure through finalization of the appellate process (of which she has been denied by both

regulation and MACH), the alleged substandard would not be shared with possible future employers.

36. Generally speaking, an M&E is not considered an "adverse action" because it is not reported outside the MTF and is usually resolved within a few months. In this instant case, the implementation of the M&E after her departure from MACH ensured that it would both be reported outside the MTF to any possible future employers of Dr. Kaur, and irresolvable – it will remain in place indefinitely. In sum, she will forever be burdened with the stigmatizing information that she was not truly able to rebut or appeal.

37. Dr. Kaur was never afforded the opportunity to rebut the alleged incidents through in-person witness testimony, which is required before any alleged incident can be reported. Because the final action taken in Dr. Kaur's case was adverse, she should have been afforded the opportunity to appeal and argue her case at an in-person hearing. The failure to provide Dr. Kaur with a personal hearing in which she could appeal this adverse action was contrary to her Constitutional right to due process.

38. Accordingly, this Court should find that implementing the M&E after Dr. Kaur had left MACH to be contrary to her Constitutional right to due process, and therefore unlawful.

**RELIEF**

Wherefore, Dr. Kaur prays that this Honorable Court conduct a speedy hearing and direct the following relief:

1. Direct the Department of the Army to remove Dr. Kaur's M&E status with unconditional reinstatement of her privileges;

2. That Dr. Kaur be awarded the costs and reasonable attorney's fees incurred in bringing this action, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

3. Such other relief as may be deemed necessary or appropriate in order to afford full and complete relief.

Dated: March 11, 2022

Respectfully Submitted,

*/s/ Carol A. Thompson*
Carol A. Thompson,
DC Bar No. 1658143
FEDERAL PRACTICE GROUP
1750 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone: (202)862-4360
Facsimile: (888)899-6053
cthompson@fedpractice.com

Attorney for Plaintiff